# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROBERT VIGIL,

       Plaintiff,

vs.                                                                 CIV  NO. 01-0477 ELM/WWD

LUNA VOCATIONAL TECHNICAL
INSTITUTE,

       Defendant.


## MEMORANDUM OPINION AND ORDER


**THIS MATTER** comes before me on two motions for Summary Judgment filed by the

Defendant Luna Community College formerly known as Luna Vocational Technical Institute.

The first Motion for Summary Judgment addresses Plaintiff's claims for breach of contract and

breach of the implied covenant of good faith and fair dealing, Counts III and IV of the Complaint.

The second Motion for Summary Judgment addresses Plaintiff's claims for discrimination on the

basis of national origin and sex, and for retaliation in violation of Title VII of the Civil Rights Act,

Counts I, II and V.  Defendant also moves for summary judgment on Count VII which alleges

wrongful discharge.  Having reviewed the moving papers and their attachments, I find that the

motions should be granted in part and denied in part.  Summary Judgment will be granted on the

claims for discrimination on the basis of national origin and sex in violation of Title VII of the

Civil Rights Act, Counts I and II.  Summary Judgment will be granted on the claim for retaliation

in violation of Title VII, Count V. Summary Judgment will be denied on Counts III, IV and VII, breach of contract, breach of the covenant of good faith and wrongful discharge. Plaintiff concedes that Count VI alleging equal pay violations fails to state a claim upon which relief can be granted. Count VI is therefore dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Having dismissed or granted summary judgment on all the federal claims in Plaintiff's Complaint, I am left with just the state law claims of breach of contract, breach of the covenant of good faith and wrongful discharge. I may, in my discretion, decline to exercise jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §1367 (c)(3). However, trial is scheduled in approximately a month and discovery is complete. The case is ready for resolution. The scheduled trial in federal court in Albuquerque should cause no undue hardship for the parties. Therefore, I have decided to continue to exercise jurisdiction over the state law claims so that the parties may bring this matter to resolution in the very near future.


## FACTUAL BACKGROUND

The Plaintiff Robert Vigil began as a part-time instructor at Luna Vocational Technical Institute in 1990-91 but was employed as a full-time instructor the following year and every year thereafter until the end of the school year 2000. Luna Vocational Technical Institute, now known as Luna Community College, is in Las Vegas, New Mexico but has a satellite campus in Springer, New Mexico where Mr. Vigil taught from 1990 to May of 1999.

In January, 1999, one of Mr. Vigil's students, Kathy Dipert, submitted a written grievance against him, alleging certain actions by Mr Vigil which she considered to be sexual harassment. Her sister, Bobbie Jean Trujillo, made a similar written grievance two days later against Mr. Vigil.

There had been ongoing tension since October, 1998, between the two students and Mr. Vigil around the use of vulgar language by the students in front of Mr. Vigil and an allegation made by Mr. Vigil that Ms. Dipert had been cheating on a test. At that time, in October, 1998, Mr. Vigil brought these matters to the attention of Mr. Steinpreis, the director of the Springer satellite campus, and asked him to investigate the complaints.

But now the students had made written complaints, copies of which were given to Mr. Vigil. Luna asked for responses from Mr. Vigil and began an investigation of the grievances. From Mr. Vigil's responses and its interviews, the school concluded that it was unable to substantiate the complaints and sent letters to the two students in February, with copies to Mr. Vigil, informing the students of the conclusion of no substantiation.

A week later an attorney for Ms. Dipert and Ms. Trujillo wrote the school asking it to further investigate his clients' complaints. Luna re-opened the investigation but by April, 1999 again concluded that the complaints of the two students were unsubstantiated. The President of Luna wrote the attorney for Ms. Dipert and Ms. Trujillo informing him the investigation was complete and that the school had been unable to substantiate the allegations of Ms. Dipert or Ms. Trujillo. Throughout this time however, Mr. Vigil did not feel that his own complaints against Ms. Dipert or Ms. Trujillo, which pre-dated the written complaints from the two women, had been adequately investigated.

On April 20, 1999 Dr. Jorge Thomas, the Vice President for Academic and Student Affairs at Luna Community College, asked Mr. Vigil if he would consider transferring from the Springer satellite campus to the main campus in Las Vegas. Dr. Thomas told Mr. Vigil the transfer would involve a new position which still needed to be clarified. The General Education

Department coordinator Marlene Tenorio from the Las Vegas campus called Mr. Vigil to discuss the new position for Mr. Vigil at the Las Vegas campus. While she told him the job description was not yet written, Ms. Tenorio described what she knew of the proposed job. From their conversation, Mr. Vigil understood that the job would involve such things as grant writing, working with the community, creating internships for students and working with various programs to improve the General Education Department. Mr. Vigil understood he would not be teaching classes at his new job. Mr. Vigil agreed in May, 1999, to take the transfer to the Las Vegas campus.

Mr. Vigil signed a letter of intent on May 14, 1999 indicating he accepted the offer of continued employment at Luna, presumably on the Las Vegas campus. On August 20, 1999 Mr. Vigil signed his annual employment contract for the 1999-2000 school year which stated that he was being appointed to a regular faculty status as an Instructor with the Department of Humanities and Adult Basic Education. Mr. Vigil, knowing that the job description had not yet been written, assumed the term "Instructor" was a "canopy" for his new position. He began working on a grant application at the Las Vegas campus.

Classes began that year on Monday, August 23, 1999. On Wednesday, August 25, much to his surprise, Mr. Vigil was handed a list of students whom he was to teach and his teaching assignments. Mr. Vigil told Ms. Tenorio that there was a conflict in the position he had been told he would have and the teaching assignments he had just been handed. Ms. Tenorio told him he was an instructor and that if he wanted to do any grant writing it would have to be done on his own time.

On approximately August 30, 1999, Mr. Vigil became aware that five female students had

requested to transfer out of his class and that several students had complained that he was not in his classroom. During the fall semester, 1999, enrollment in the Adult Basic Education classes declined. Enrollment in Mr. Vigil's classes declined dramatically and eventually, by October, there were few or no students enrolled in Mr. Vigil's classes. Mr. Vigil was directed to team teach with the other Adult Basic Education instructor, Mr. Gallegos. Enrollment numbers for the last part of the fall semester for the Adult Basic Education classes were reported under that instructor's class load.

Luna Community College also began an investigation into Mr. Vigil's attendance at his classes and his instruction in the fall of 1999. An independent consultant, Dr. Kolkmeyer, reported to the new president of Luna Community College, Dr. Pino, that Mr. Vigil was not being attentive to his classes. Mr. Vigil disputes the validity of Dr. Kolkmeyer's report and conclusions regarding his teaching.

By the end of the fall semester Dr. Pino decided that there were not enough students in the Adult Basic Education program to justify two full time instructors. In order to keep Mr. Vigil employed full time as an instructor, Luna offered Mr. Vigil an amended contract to teach chemistry, physics and blueprint reading for the spring semester of 2000. Mr. Vigil accepted the amended contract and taught those courses in the Science, Trades and Technologies department. He received a "Very Good" rating in overall performance from his immediate supervisor, Karla Garcia.

However, on April 20, 2000, Mr. Vigil was informed by a letter from Dr. Pino that his name was not on the list for continued employment at Luna for the following school year. Mr. Vigil's employment contract with Luna Community College expired on June 30, 2000. The stated

reason for his non-renewal for the following school year was that there was insufficient enrollment in the Adult Basic Education courses. Ms. Garcia, the supervisor for the Science Department, stated she did not consider Mr. Vigil to teach chemistry or physics for the following school year because she had been told to hire instructors with a Master's Degree. Mr. Vigil did not have a Master's Degree; he had a Bachelor's Degree in Chemistry.

Mr. Vigil filed his charge of discrimination with the EEOC on July 17, 2000 alleging that he had been discriminated against on the basis of his sex, national origin and retaliation. In a letter dated January 17, 2001, the EEOC issued a pre-determination interview stating that more than 300 days had passed since the incidents complained of and therefore the charge was not timely. The EEOC issued a Dismissal and Notice of Rights on January 30, 2001 stating in party that they were unable to conclude that the information obtained established violations of the statutes. Plaintiff asked the EEOC to reconsider its decision. The EEOC responded by letter of March 6, 2001 stating that there was no basis for it to reconsider its determination. Plaintiff filed this action on April 27, 2001.

## SUMMARY JUDGMENT

Defendant Luna Community College has moved for summary judgment on the Title VII claims, Counts I, II and V, on several grounds. I find the Defendant's primary argument, that the Title VII claims are time barred, conclusive and therefore do not address the other arguments put forward by the Defendant.

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "'secure the just, speedy and inexpensive determination of every action'." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F. 2d 1167, 1170 (10th Cir. 1991).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

There are no material issues of fact regarding the time the adverse employment acts occurred or the time of the filing of the EEOC charge. Since these facts are dispositive of the legal issue whether the Title VII claims are time barred, Summary Judgment on these issues is appropriate.


## TIME LIMITATIONS OF TITLE VII CLAIMS

Title VII requires that a charge of discrimination be filed in a deferral state, of which New Mexico is one, within 300 days of the alleged unlawful employment practice. 42 U.S.C. §2000e-

5(e)(1). A claim is time barred if not filed within the 300 days. *National Railroad Passenger Corporation v. Morgan*, 122 S. Ct. 2061, 2070 (2002). Mr. Vigil filed his EEOC charge on July 17, 2000. The 300 day filing period encompassed conduct which would have occurred on or after September 21, 1999. The unlawful employment practices of which Mr. Vigil is complaining and upon which his lawsuit is predicated occurred <u>before</u> September 21, 1999 and are therefore outside the 300 day filing period.

An unlawful employment practice is defined by statute, 42 U.S.C. §2000e-2, and has been repeatedly interpreted to mean a discrete act or single occurrence. *National Railroad*, *supra*. Mr. Vigil's Title VII claims are predicated on the following adverse employment practices: 1) the sexual harassment by female students at the Springer satellite campus and the administration's failure to adequately investigate Mr. Vigil's complaints which began October, 1998 and continued to April, 1999, 2) the written complaints from female students received by the Springer administration in January, 1999 and the administration's investigation which occurred from January, 1999 to April, 1999, and 3) the offer of a transfer to the Las Vegas campus and offer of a new position which began in April, 1999 and culminated on August 25, 1999 when Mr. Vigil was informed he would be not be an administrator as he alleged he had been led to believe but would be instructing students full time. All alleged unlawful employment practices of which Mr. Vigil is complaining occurred before the 300 day time limitation of September 21, 1999.

Mr. Vigil has argued that his non-renewal of his annual contract, which occurred in April 2000 when he was informed that he would not have a position the following year, was a delayed adverse employment act which was caused by his complaints about sexual harassment at the Springer campus. His situation is similar to the professor in *Delaware State College v. Ricks*,

449 U.S. 250 (1980), in which the professor brought his EEOC charge only after his one year terminal contract expired. The Court held that the adverse employment act suffered by the professor was actually his denial of tenure which had occurred a year prior to the expiration of his contract and his claim was therefore time barred. The allegations of his complaint focused on his denial of tenure, not the termination which was the delayed but inevitable consequence of a denial of tenure at the school. "[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Delaware State College, supra* at 258, quoting *Abrahamson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).

In Mr. Vigil's complaint, the primary allegations are that the school induced him to transfer to the Las Vegas campus under false pretenses and in retaliation for his complaints of sexual harassment. The Complaint further alleges that the school failed to adequately investigate Mr. Vigil's complaints about the sexual harassment he had been subjected to by two female students at the Springer campus. While the end result of the transfer may have been a non-renewal of Mr. Vigil's contract, due to a low number of Adult Basic Education students at the Las Vegas campus, the operative adverse employment act occurred on or before August 25, 1999 when it became obvious to Mr. Vigil that he would not have an administrative job as he had been led to believe. See, e.g., *Delaware State College v. Ricks, supra*.

Mr. Vigil also argues that Luna Community College's failure to renew his annual contract in April, 2000, was part of a continuing violation which began at the Springer campus and continued while he was employed at the Las Vegas campus. Asserting the continuing violation doctrine, he argues that his Title VII claims are not time barred.

The continuing violation doctrine has recently been clarified by the Supreme Court in

*National Railroad Passenger Corporation v. Morgan*, 122 S. Ct. 2061 (2002). The Court reversed the Ninth Circuit court below, which had held as many Circuit courts previously had, that serial or continuing discriminatory or retaliatory acts that are plausibly or sufficiently related to an adverse employment practice that fell within the 180 or 300 day time limitation would not be time barred even though the related adverse employment acts had occurred prior to the 180 or 300 day time limitation. Instead, the Court held that the Plaintiff must bring his action within the 180 or 300 day time limit of each discrete, separate adverse employment act (each act beginning anew the running of the time limitation) or allege and eventually prove a hostile workplace environment. *National Railroad, supra* at 2072-2075. A continuing violation had to be a more than adverse employment practices "plausibly or sufficiently related" to other adverse employment acts. To be continuous it needed to be a pervasively discriminatory or hostile workplace environment. *Id.*, at 2074.

Hostile environment claims are altogether different from claims based on discrete adverse employment acts. *National Railroad, supra* at 2073. Plaintiff has not alleged the kind of facts in his Complaint that would establish a hostile workplace environment. *See, e.g., Harris v. Forklift Systems, Inc.*, 510 U.S.17, 23 (1993) (a workplace permeated with discrimination, intimidation, ridicule and insult creates an abusive or hostile working environment). Therefore, Plaintiff cannot defeat the time limitations of 42 U.S.C. §2000e-5(e)(1) through a hostile environment claim.

I find that Mr. Vigil's Title VII claims alleging discrimination on the basis of national origin, sex and retaliation are time barred by 42 U.S.C. §2000e-5(e)(1) because the discrete, adverse employment acts upon which his claims are based occurred more than 300 days prior to the filing of his EEOC charge.

<u>BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND</u>

<u>WRONGFUL TERMINATION</u>

Counts III, IV and VII of the Plaintiff's Complaint allege claims based on the contract of employment Mr. Vigil had with Luna Community College.  Mr. Vigil had a annual, renewable contract as a full time instructor since 1991.  The Plaintiff argues that Luna breached his contract in two different ways - first when it promised him a specific job as an administrator at the Las Vegas campus, only to withdraw the offer when the school year started, and secondly, when it failed to renew his annual contract.

There are material facts at issue regarding both arguments.  The facts surrounding the alleged offer of an administrative job at the Las Vegas campus and its subsequent withdrawal are contested by the parties.  The fact that the contract which Mr. Vigil signed for the school year 1999-2000 designated him as a full time instructor is not dispositive of the issue.  Mr. Vigil has presented extrinsic evidence that the contract was ambiguous as to his job description and his expected duties.  I find that Mr. Vigil's employment contract for the school year 1999-2000 was ambiguous as a matter of law.  Once a contract is found to be ambiguous, it becomes a matter for the fact finder to determine the intent of the parties when they entered into the contract.  *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232 (1993).

Whether Mr. Vigil had a reasonable expectation of continued employment year to year is also a factual inquiry and depends on the policies, practices and procedures under which annual contracts were awarded at Luna Community College.  *See Calhoun v. Gaines*, 982 F. 2d 1470 (10th Cir. 1992) (college teacher had legitimate expectation of continued employment under the circumstances); *But see Graff v. Glennen*, 106 N.M. 668, 748 P.2d 511 (1988) (university

business manager had no legitimate entitlement to continued employment when serving under yearly temporary appointment).

The cause of action alleging a breach of the implied covenant of good faith and fair dealing is also fact dependent. Whether the covenant has been breached depends first on the contract on which it is based, and secondly on the circumstances surrounding the alleged breach. The cause of action for wrongful termination or wrongful discharge is the tort version of the implied covenant of good faith and fair dealing. *See Watson v. Blankinship*, 20 F. 3d 383 (10th Cir. 1994).

There are disputed material issues of fact concerning the Plaintiff's breach of covenant cause of action and the two related causes of action for breach of implied covenant of good faith and fair dealing and the cause of action based in tort for wrongful termination. Summary Judgment cannot be granted on these state law claims.

## CONCLUSION

**IT IS HEREBY ORDERED THAT** the Defendant's Motion for Summary Judgment is GRANTED as to Counts I, II and V. The Defendant's Motion for Summary Judgment is DENIED as to Counts III, IV and VII. Count VI alleging Equal Pay Act violations is DISMISSED for failure to state a claim upon which relief can be granted.

_____

SENIOR UNITED STATES JUDGE